UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSEPH HENRY RICHMIRE,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

Defendant.

CASE NO. 12-cv-05037

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

Noting Date: November 30, 2012

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 11, 14, 15).

Regarding the medical evidence provided by examining doctor, Dr. Peterson, the ALJ failed to provide specific and legitimate reasons to discount this medical opinion evidence. For this reason, and because this error affected the ultimate disability decision,

this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Administration for further proceedings.

## BACKGROUND

Plaintiff, JOSEPH HENRY RICHMIRE, was nineteen years old on his alleged disability onset date of February 1, 2007 and twenty-two years old on the date of the ALJ's written decision (*see* Tr. 23, 117, 121). Plaintiff has never lived away from a parent (Tr. 336). Although plaintiff dropped out of high school, he reported being enrolled in a mail order program to receive his high school diploma (Tr. 337). He has no relevant past relevant work experience and has reported never having a job (*id.*; *see also* Tr. 22). His activities of daily living include getting up between 9 am and noon; feeding his guinea pig; studying on-line high school courses; and watching TV (Tr. 337).

Having weight "recorded as ranging from about 450 pounds to as high as 629 pounds with his height listed as 77 inches" (Tr. 14), plaintiff is morbidly obese; he reports having been obese all of his life (*see* Tr. 337); and has had surgery recommended (*see* Tr. 19). In addition to obesity, plaintiff also suffers from the severe impairments of sleep apnea; hypertension; depression; and social anxiety disorder, generalized (*see id.*).

## PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Income and Child's Insurance Benefits (*see* Tr. 12, 111-22). His applications were denied initially and following reconsideration (*see* Tr. 65-79). His requested hearing was held before Administrative Law Judge M.J. Adams ("the ALJ") on March 15, 2010 (Tr. 30-51, 80-82). On April 22,

2010, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 9-23).

On November 22, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. On January 16, 2012, plaintiff filed a complaint in this Court, seeking judicial review of the ALJ's written decision (*see* ECF No. 1). Defendant filed the sealed administrative transcript regarding this matter ("Tr.") on March 27, 2012 (*see* ECF Nos. 8, 9). In his Opening Brief, plaintiff raises one specific issue: whether or not the ALJ committed harmful legal error in his evaluation of the opinion of Dr. J. Keith Peterson, Ph.D. ("Dr. Peterson"), who is an examining doctor (*see* ECF No. 11, p. 1).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot,

considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews*, *supra*, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings

offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina*, *supra*, 674 F.3d 1104, 1115-16, 1117-19, 11121-22, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

DISCUSSION

The ALJ committed harmful legal error in his evaluation of the opinion of examining doctor, Dr. J. Keith Peterson, Ph.D. ("Dr. Peterson").

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in

the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick*, *supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." *Id.* (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester*, *supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes*, *supra*, 881 F.2d at 752).

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the

RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

Dr. Peterson examined and evaluated plaintiff on June 20, 2008 (*see* Tr. 336-341). He conducted a mental status examination ("MSE"); diagnostic interview; Weschler Memory Scale, third edition ("WMS-III"); and trail making test (*see* Tr. 336). Dr. Peterson noted plaintiff's report that he had never previously seen a mental health professional (*see* Tr. 337).

Dr. Peterson assessed that plaintiff demonstrated "adequate stamina as we were able to complete the examination without breaks," although he also assessed that plaintiff was experiencing anxiety and distress (Tr. 338). As assessed by Dr. Peterson, "[i]n short, [plaintiff] appeared to be enduring our time together with difficulty [and] [h]is range of affect was thus quite minimal" (*see id.*). Dr. Peterson noted that plaintiff's affect "was persistently negative, grim, and almost hostile," and also noted that plaintiff assured him that he would not have attended the evaluation, "even though he understood the benefit of the appointment," if his father had not made him do so (*id.*).

Dr. Peterson observed that plaintiff demonstrated adequate short term memory, but that plaintiff's memory for items "after a two minute interference task was only 33%" (Tr. 338). Plaintiff's working memory ability was at the third percentile (*id.*). Dr. Peterson "guessed [plaintiff's] receptive and expressive vocabulary to be average to below average" (*id.*). Dr. Peterson assessed an articulation disorder (*id.*).

Dr. Peterson observed that plaintiff was able to perform all three steps, when given a three-step instruction; however, he opined that plaintiff's "emotional upset impacted his

focusing ability" (Tr. 339). Dr. Peterson explained the basis for his opinion: Plaintiff "seemed to struggle with staying on task and dealing with his inner experience of upset" (*id.*).

Dr. Peterson opined that plaintiff's "insight and judgment seemed quite impaired" (*id.*). Dr. Peterson gave a number of examples, such as that when he asked plaintiff "what he would do if he was the first person in the theater to smell smoke, he stated 'look around'" (*id.*). Dr. Peterson opined that this response "is consistent with the passivity that is part of his malaise" (*id.*).

Regarding plaintiff's attitude and general behavior, Dr. Peterson opined as follows:

> I detected to (sic) evidence of malingering. However, the claimant had a rather pronounced 'worst case scenario' about seemingly every topic we discussed. He had a pessimistic and hopeless view of the future, and this impacted his description of his symptoms.

(Tr. 338).

Dr. Peterson also indicated that plaintiff 'was upset about the social nature of our interview, and this seemed to effect his focusing" (Tr. 339). He indicated his opinion that plaintiff's results therefore likely were a low estimate of plaintiff's cognitive ability (*see id.*).

Dr. Peterson reported the objective results of plaintiff's memory subtests and the trail making tests (*see* Tr. 340). He indicated that plaintiff "displayed mild but definite deficits on the [Weschler Memory Scale, memory tests]" (*id.*). Although plaintiff was skilled at memorizing work pairs, he "had more difficulty retaining this information over

time" (*id.*). Dr. Peterson indicated that plaintiff's "working memory was low," and that plaintiff "showed signs of impulsivity and cognitive rigidity on the Trails test" (*id.*).

Dr. Peterson diagnosed plaintiff with major depression, chronic; social anxiety disorder, generalized; phonological disorder; and psychological factors affecting physical condition (obesity), among other diagnoses (*see id.*). Dr. Peterson also indicated that plaintiff was receiving no mental health care and had minimal social support (*see id.*). He assigned a global assessment of functioning ("GAF") of 45 (Tr. 341).

For his summary and prognosis, Dr. Peterson indicated as follows:

> This young man has an entrenched and severe pattern of depression, poor eating habits, and morbid obesity. He appears to be waiting for his depression to lift, and given the positive feedback loop between his depression, eating patterns, and social anxiety this constellation of symptoms is very likely to be chronic. It is likely that his depression is impacting his cognitive ability, as measured by these two tests. He had focusing problems, although his stamina was adequate in this setting. He was able to perform simple and more complex instructions. His short term and working memory appeared to be low.
>
> This claimant will be challenged when it comes to working. From a cognitive standpoint he should be able to perform a very basic entry-level position. He should also be able to enter some type of rather basic vocational training. From a physical standpoint, he will have challenges due to his obesity. His depression is also a major hindrance.
>
> Overall, I would say that the probability of this claimant finding and keeping viable employment right now is marginal to poor. This probability would improve to fair if his depression were successfully treated.

(Tr. 341).

The ALJ provided a relatively thorough discussion of the report of Dr. Peterson (*see* Tr. 20-21). However, he included the following regarding the weight he gave to Dr. Peterson's opinions:

> I weigh the portion of the assessment heavily that found a fairly unremarkable mental status examination, showing the claimant could perform at least simple tasks because this is supported by the record and the State evaluations. However, his comment that the claimant's ability to find and keep employment was marginal to poor is given less weight because he felt that the claimant could be malingering. Furthermore, the claimant admitted that he had never sought mental health treatment and Dr. Peterson thought the claimant's condition would improve with treatment, to the point that he could work.

(Tr. 21).

First, the Court concludes that the ALJ's summary of the results of plaintiff's mental status examination from Dr. Peterson as "fairly unremarkable, showing the claimant could perform at least simple tasks" (*see id.*) is not a finding based on substantial evidence in the record as a whole. *See Magallanes, supra*, 881 F.2d at 750 ("Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"). There were many findings in plaintiff's mental status examination that were remarkable, including plaintiff's "poor working memory," and the fact that plaintiff's memory for items "after a two minute interference task was only 33%" (*see* Tr. 338, 341). In addition, the ALJ indicated that Dr. Peterson's assessment demonstrated that plaintiff "could perform at least simple tasks;" but, this finding by the ALJ is misleading. Although Dr. Peterson's report indicated that plaintiff was able to perform all three steps, when given a three-step instruction; he qualified that finding, as already

mentioned, with his opinion that plaintiff's "emotional upset impacted his focusing ability" (*see* Tr. 339). Dr. Peterson explained the basis for his opinion: Plaintiff "seemed to struggle with staying on task and dealing with his inner experience of upset" (*id.*).

In addition, the Court finds that the ALJ erred in his evaluation of Dr. Peterson's report when he indicated that Dr. Peterson "felt that the claimant could be malingering" (*see* Tr. 21). The relevant section already has been identified, *see supra*, and it is clear that Dr. Peterson was indicating that there was no evidence of malingering: "I detected to (sic) evidence of malingering. However, the claimant had a rather pronounced 'worst case scenario' about seemingly every topic we discussed" (*see* Tr. 338). This interpretation is buttressed by Dr. Peterson's report as a whole, and this mistake by the ALJ suggests that the ALJ misinterpreted Dr. Peterson's entire report. For example, Dr. Peterson included in his summary conclusions that it was "likely that his depression is impacting his cognitive ability" and that plaintiff suffered from passive malaise (*see* Tr. 339, 341). There was no indication in his summary or his diagnoses that Dr. Peterson opined that plaintiff was malingering.

Based on the relevant record, the Court concludes that the ALJ's finding that Dr. Peterson opined that plaintiff could have been malingering is not a finding based on substantial evidence in the record as a whole. *See Magallanes, supra*, 881 F.2d at 750. Furthermore, this finding by the ALJ is so wholly at odds with the entirety of the report by Dr. Peterson that it demonstrates that the ALJ did not understand Dr. Peterson's report and demonstrates that Dr. Peterson's opinions were not evaluated properly.

The Court also notes that the fact that plaintiff had not sought mental health treatment does not demonstrate any flaw with Dr. Peterson's assessments or reasoning, as the ALJ has not explained his apparent inference that a claimant who does not seek out mental health treatment must therefore not have any functional limitations on his ability to work. Although a lack of adherence generally with prescribed treatment may call into question a Social Security claimant's credibility regarding the severity of the alleged symptoms and impairments, *see* 20 C.F.R. § 404.1530; SSR 96-7 1996 SSR LEXIS 4, at *21-*22, a person suffering from a mental illness may not realize that he needs his medication, or he may not even realize that his "condition reflects a potentially serious mental illness." *See Van Nguyen, supra*, 100 F.3d at 1465. When a person suffers from a mental illness, and the mentally ill person does not have the requisite insight into his condition to seek treatment, this fact actually can indicate a greater severity of mental incapacity. *See Van Nguyen, supra*, 100 F.3d at 1465; (*citing Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.")).

The ALJ erred when he failed to consider whether or not plaintiff's mental impairments hindered his ability to seek out mental health treatment before relying on this factor in support of his failure to credit fully the opinion of an examining doctor. Dr. Peterson specifically indicated that plaintiff reported that he would not have attended his appointment if his father had not made him do so, despite his understanding that it was for his benefit; and Dr. Peterson numerous times indicated that plaintiff was upset due to the social nature of the appointment. According to the Social Security Administration's own rule, "the adjudicator must not draw any inferences about an individual's symptoms and their

functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *See* SSR 96-7, 1996 SSR LEXIS 4, at *21-*22; *see also Regennitter v. Comm'r SSA*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it") (citations, ellipses and brackets omitted).

The Court also notes that Dr. Peterson was aware of this fact of no mental health treatment, as he cited it in his diagnoses (*see* Tr. 340). Despite the lack of mental health treatment, Dr. Peterson nevertheless opined that plaintiff suffered from limitations on his ability to work (Tr. 341). The ALJ failed to explain adequately why his interpretation of this evidence was more correct than that of Dr. Peterson. *See Reddick, supra,* 157 F.3d at 725 (*citing Embrey*, 849 F.2d at 421-22). Similarly, regarding the ALJ's reference to the fact that Dr. Peterson opined that mental health treatment would help the plaintiff increase his ability to work, this fact does not comprise a legitimate reason to fail to credit fully Dr. Peterson's opinion, and the ALJ failed to indicate any evidence supporting the finding.

For the reasons stated and based on the relevant record, the Court concludes that the ALJ failed to provide specific and legitimate reasons for his failure to credit fully the opinions of examining doctor, Dr. Peterson. The Court also concludes that the ALJ's reasons for his failure to credit fully Dr. Peterson's opinions demonstrate that Dr. Peterson's opinion was not understood and was not evaluated properly.

Defendant argues that even if the ALJ erred in his review of the evidence provided by Dr. Peterson, it is harmless error (*see* ECF No. 14, pp. 4-7). However, based on the relevant record, the Court concludes that although the ALJ discussed other medical evidence in his written decision, this discussion does not overcome the error in the ALJ's evaluation of the opinions of Dr. Peterson. Dr. Peterson's opinions were medical opinions specifically regarding plaintiff's ability to work, they were not conclusory opinions that plaintiff was disabled, despite defendant's argument to the contrary. *See* SSR 96-5p, 1006 SSR LEXIS 2 at *12-*13; *see also Reddick, supra*, 157 F.3d at 725 (*citing Magallanes, supra*, 881 F.2d at 751).

As mentioned previously, in the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *See Molina, supra*, 674 F.3d at 1115-16, 1117-19, 11121-22, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki*, 556 U.S. at 407; *Stout, supra*, 454 F.3d at 1054-55.

Not only was Dr. Peterson's medical opinion not understood or evaluated properly, in addition, the ALJ's determination regarding plaintiff's residual functional capacity does not reflect that Dr. Peterson's opinion was credited fully (*see* Tr. 17, 336-41). A residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20. Here, the ALJ failed to do so adequately. *See id.*

Based on the relevant record as a whole, the Court concludes that the ALJ's error is relevant to the determination regarding plaintiff's residual functional capacity; and hence, is relevant to the ultimate disability determination. Therefore, the ALJ's error in his review of the medical opinions from Dr. Peterson is not harmless. *See Molina*, *supra*, 674 F.3d at 1115-16, 1117-19, 11121-22.

## CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on November 30**,** 2012, as noted in the caption.

Dated this 9th day of November, 2012.

J. Richard Creatura
United States Magistrate Judge